UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-Civ-22473-SEITZ
MAGISTRATE JUDGE P.A. WHITE

TAVARENCE WIGGINS,                    :

    Petitioner,                       :

v.                                    :        REPORT OF
                                               MAGISTRATE JUDGE
WALTER McNEIL,                        :

    Respondent.                       :
_____

## I. Introduction

Tavarence Wiggins, who is presently confined at Martin Correctional Institution in Indiantown, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in case number 97-33314, entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus and supporting memorandum of law, the Respondent's response to an order to show cause, Petitioner's reply, the trial transcript, and appendixes of exhibits from both parties.

## II. Procedural History

Petitioner and thirteen co-defendants were charged with multiple offenses related to a cocaine racketeering conspiracy. The

1

charges against petitioner were: violation of the Florida RICO Act (Count I); conspiracy to violate the Florida RICO Act (Count II); conspiracy to commit grand theft (Counts IX, XVII); conspiracy to commit armed robbery (Count X); cocaine trafficking of more than 400 grams (Count XV); and robbery using a deadly weapon or firearm (Count XVI). [DE# 8, App. XX at 1].

At trial, Miami-Dade detectives explained they received a tip that a Miami-Dade police officer Trevin Johnson was part of an organization carrying out drug rip-offs. Members of the group would allegedly arrange drug sales then rip off the other party for drugs and/or money. Johnson sometimes participated by pulling over the victim and taking the drugs and money or providing false police reports. The State obtained warrants to intercept phone calls on Johnson's and another co-defendant's phones and placed a tracking device on Johnson's patrol car. Wiggins' role was to help arrange drug transactions with potential victims. The State introduced numerous taped phone conversations discussing the organization and its intended operations. These calls included recordings of Wiggins. The State also called cooperating co-defendant Raymond "Apple Head" Flanders who explained Wiggins was a mid-level member of the organization who personally participated as a driver in the rip-off of an undercover FDLE agent (the undercover incident). In that incident, Wiggins allegedly posed as a drug buyer and led the undercover FDLE agent past a location where Johnson waited in his patrol car. Johnson pulled over the agent's car and took a bag full of cocaine and cash which was to be divided among the participants.

Wiggins admitted at trial that he attempted to arrange for two rip-offs (the Fice and Duval incidents; Counts X and XVII), but denied involvement in the undercover incident (Counts XV-XVI). Wiggins' defense was that he only participated because he was

2

entrapped by a confidential informant to whom he owed money. Wiggins denied he was involved in the undercover operation and testified he was picking up his son from daycare when that rip-off occurred.

The jury found Wiggins guilty of: conspiracy to violate the Florida RICO Act (Count II); cocaine trafficking without a firearm of between 400 grams and 150 kilos for the undercover operation (Count XV); and robbery without a firearm for the undercover operation (Count XVI). The jury acquitted him of the substantive RICO charge (Count I) as well as the predicate acts relating to the Fice and Duval incidents (Counts X, XVII). [DE# 8, App. XX at 105-06]; (T. 2703). The State moved for habitual offender sentencing or an upward departure sentence. [DE# 8, App. XX at 119]. The imposed a habitual violent felony offender sentence of life with a fifteen-year minimum mandatory for Counts II and XV, and thirty years with a ten-year minimum mandatory for Count XVI, concurrent. [DE# 8, App. XX at 146, 156].

On appeal, Wiggins argued: (1) the State denied him a fair trial by: (a) impeaching him with an uncharged crime of dishonesty; (b) cross-examining him on the truth and veracity of a key State witness; (c) vouching for the reliability of the State's case during closing; (2) the trial court erred by denying his motion to declare the habitual offender statute unconstitutional; (3) his convictions and sentences must be vacated because the judge was unqualified. [DE# 8, App. A]. The Third District affirmed on August 8, 2001. <u>Wiggins v. State</u>, 790 So. 2d 610 (Fla. 3d DCA 2001) (3D00-907). The mandate issued on August 24, 2001.[1]

---

[1] The Court takes judicial notice of the records pertaining to Wiggins that are maintained by the Clerk of the Third District Court of Appeal at http://199.242.69.70/pls/ds/ds_docket_search?pscourt=3. <u>See</u> Fed. R. Ev. 201.

On May 5, 2002,[2] Wiggins filed a habeas petition in the Third District arguing appellate counsel was ineffective for failing to raise the following on appeal: (1) the venire was not sworn prior to voir dire examination (due process violation, no jurisdiction; fundamental error); (2) the court's denial of re-cross examination of Flanders because the witness changed his testimony on re-direct (confrontation; preserved T. 1604-09); (3) the court's refusal to give defendant's requested jury instruction on entrapment on predicate acts underlying count I - the defense applied to counts X and XVII, therefore should the jury acquit on those counts (which it did) based on entrapment, the corresponding predicate acts H and M, underlying Counts I and II, should be removed (preserved as to count I T. 2384-85; unpreserved as to count II conspiracy but raising it below would have been futile); (4) entitled to new trial because the court erred in answering a jury question about whether it could find him not guilty on Count I and guilty on Count II, and whether he would have to be convicted of two predicate acts to be found guilty of RICO conspiracy/ did not re-read the instructions to the jury (T. 2698-2701); (5) the cumulative effect of the prosecutor's closing arguments deprived him a fair trial (fundamental error)- counsel only argued vouching on appeal and should have also raised (a) facts outside the evidence (phone tapes, other ripoff (T. 320-22, 518-19, 693, 814-15, 2436-37, 2442-43), (b) referring to Club Rolex as a place where drug dealers hang out (T. 335-36, 629, 1943, 2288-89 - abuse of discretion by denying motion for mistrial); (c) prosecutor testifying during closing-facts not in evidence, opinion of case (T. 2442-43, 2519-21); (d) called Wiggins a liar (T. 2506-10); (e) judge denied motion to disqualify (R. 125; denied at 2/18/02 hearing as legally

---

[2] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

4

insufficient). [DE# 8, App. D]. The Third District denied the petition and denied rehearing, but the Florida Supreme Court instructed it to reopen the case. Wiggins v. Moore, 829 So. 2d 227 (Fla. 3d DCA 2002)(3D02-1307); Wiggins v. Crosby, 860 So. 2d 980 (Fla. 2003) (SC03-191) [DE# 8, Apps. O, P]. The Third District denied the petition for the second time on April 7, 2004. Wiggins v. Moore, 871 So. 2d 890 (Fla. 3d DCA 2004).

Wiggins filed a motion to correct illegal sentence on March 24, 2003, in which he argued: (1) the sentence did not comport with the court's oral pronouncement; and (2) the life sentence for RICO conspiracy exceeds the statutory maximum. [DE# 8, App. S, attachment]. The trial court denied relief and the Third District affirmed on appeal and denied rehearing. Wiggins v. State, 852 So. 2d 247 (Fla. 3d DCA 2003) (3D03-1433). The mandate issued on August 22, 2003. [DE# 8, App. V].

On August 22, 2003, Wiggins filed a motion to vacate his judgment and sentence through counsel. [DE# 8, App. W]. In an amended motion, he argued counsel was ineffective for failing to: (1) object when the venire was not sworn prior to voir dire; (2) object to the court's refusal to permit re-cross examination of Flanders; (3) object to the prosecutor's comments in opening and on direct examination referring to telephone calls and a "rip-off" that were not in evidence; (4) object to the prosecutor's closing argument calling Wiggins a "liar;" (5) move to suppress recordings of his telephone calls where there was no basis to have them intercepted and admitted at trial; (6) call alibi witnesses Gail Taylor, Derrick Taylor and Delman Taylor, and present other alibi evidence; (7) failing to request an "independent act" jury instruction; and (9) object to the prosecutor testifying during closing argument. He also argued the trial court erred by (8)

failing to re-read the jury instructions regarding the elements of the offense charged and provided the jury with a "yes"/ "no" answer to a jury question. [DE# 8, App. X]. In a supplemental motion, Wiggins argued, pro se, that counsel was ineffective for failing to: (10) request an entrapment instruction as to RICO conspiracy and all other counts which the jury considered (was only requested as to conspiracy to commit robbery, Count X, and conspiracy to commit grand theft, Count XVII); (11) request an instruction on alibi defense; (12) object to the instruction given on the principle theory as it pertains to trafficking in cocaine (Count XV); (13) object to the flawed instruction on trafficking which did not contain the knowledge element; (14) ameliorate the negative effect of Wiggins' prior convictions by explaining they resulted from a nolo contendere plea because he was guilty; counsel should have requested a jury instruction that evidence of the prior offenses is not substantive evidence of guilt; and counsel should have objected to negative references to Wiggins' character in closing; (15) object to the imposition of a habitual violent felony offender life sentence without prior written notice, and object to the imposition of a life sentence over which the court thought it lacked discretion. [DE# 8, App. BB]. The court denied the motion and supplemental motion for the reasons set forth in the State's response and supplemental response. [DE# 8, App. EE]. The Third District affirmed and denied rehearing. <u>Wiggins v. State</u>, 986 So. 2d 616 (Fla. 3d DCA 2008) (3D08-962); [DE# 8, App. LL]. The mandate issued July 28, 2008. [DE# 8, App. MM].

Wiggins filed a "Supplemental Motion Post Conviction Relief as to Claim Three of First Supplement" on November 5, 2007. [DE# 8, App. FF]. The court denied relief without an evidentiary hearing on November 29, 2007. [DE# 8, App. GG].

On January 28, 2008, Wiggins filed a habeas petition in the Third District seeking a belated appeal of the trial court's October 25, 2007, order denying his motion for post conviction relief. [DE# 8, App. NN]. The Third District denied the petition because it stated "no basis, sworn or otherwise, for the Court to disregard the limitations period provided by the Florida Rules of Criminal Procedure or the well-settled case law prohibiting successive and duplicative applications." [DE# 8, App. OO] (3D08-218). The court denied rehearing. [DE# 8, App. PP].

Wiggins filed a second habeas petition in the Third District on November 8, 2007. [DE# 8, App. QQ]. He argued appellate counsel was ineffective for failing to raise the conspiracy principal jury instruction as fundamental error on direct appeal. The Third District denied the petition. Wiggins v. McDonough, 990 So. 2d 1082 (Fla. 3d DCA 2008) (3D07-2978). The court denied rehearing and rehearing en banc on August 5, 2008. [DE# 8, App. WW].

Wiggins filed the instant habeas petition on September 2, 2008. He argues: 1) trial counsel failed to object to improper prosecutorial comments and closing argument; 2) trial counsel failed to file motion to suppress phone calls recorded without legal basis; 3) trial counsel failed to call four alibi witnesses who would have testified petitioner was picking up his son from school on date and time of offense; 4) trial counsel failed to request entrapment jury instruction as to all charges because petitioner admitted he took part in some of the alleged crimes in the conspiracy, defense applied to all seven counts; 5) trial counsel failed to request alibi instruction; 6) trial counsel failed to object to principal instruction regarding trafficking and RICO conspiracy; 7) trial counsel failed to object to flawed jury instruction regarding trafficking cocaine; 8) trial counsel failed

7

to ameliorate negative effect of petitioner's priors by noting he pled nolo to 5 priors because he was guilty and is insisting on trial in this case because he is not guilty; 9) trial counsel failed to object to the habitual violent felony offender life sentence; 10) habitual violent felony offender sentences of thirty years with a ten-year minimum mandatory and life with a fifteen year minimum mandatory were illegally imposed without due process, and a new sentencing hearing required; and 11) appellate counsel was ineffective for failing to raise on appeal  as fundamental error the principal jury instruction regarding RICO conspiracy.

### III. Statute of Limitations and Exhaustion

The Respondent correctly concedes the instant petition was timely filed and the claims were exhausted in State court.

### IV. Standard of Review

Section 104(d) of the AEDPA provides that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that

are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams v. Taylor, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

In the instant case, Wiggins seeks habeas relief based on ineffective assistance of trial counsel. The United States Supreme Court clearly established the law governing ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689.

9

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. <u>Id.</u>

A criminal defendant must satisfy both the deficiency and prejudice prongs set forth in <u>Strickland</u> to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. <u>Strickland</u>, 466 U.S. at 697.

Combining AEDPA's habeas standard and <u>Strickland's</u> two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, Wiggins must show the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).

<u>V. Discussion</u>
<u>Ineffective Assistance of Trial Counsel</u>

1) <u>Prosecutorial Comments</u>

Wiggins argues trial counsel failed to object to improper closing argument. He complains the prosecutor (a) called him a liar (T. 2504, 2506-07, 2590); (b) improperly bolstered its case (T. 2433-34, 2492); and (c) vouched for the credibility of State witnesses (T. 2493-94, 2504, 2597).

(a) Wiggins contends counsel was ineffective for failing to object when the State improperly called him a liar.

10

The prosecutor stated as follows when arguing that Wiggins could not have picked up his son from daycare in the time noted by a surveillance officer:

> Impossible for the defendant -- for the defendant's story to be truthful. Absolutely impossible. A physical impossibility.

(T. 2504).

When arguing the phone calls Wiggins claimed he made were inconsistent with officers' surveillance observations and wiretap tapes, the prosecutor argued:

> Look at the cell phone records. They tell you times made, the duration of the call. You'll see the hours at which he's making these telephone calls. And ask yourself, is it really believable he brought his kid to daycare that day. ... Twig wants you to believe that everybody else in this case is lying.
> ...
> Everybody is lying, except the defendant. But let's talk about lies that the defendant made to you.

(T. 2506-07).

When arguing Wiggins' testimony he was entrapped by a confidential informant was not credible, the prosecutor stated:

> [T]he defendant took the stand, he told you the story about these rims he wanted to buy.
> ... [I]n order to believe that, you need to believe the defendant. Let's talk about the things that he was untruthful with you all about. Okay. Because, again, his

defense rises upon his credibility. And let's talk about
his credibility.

(T. 2590).

Counsel was not ineffective for failing to object to the
foregoing because the evidence, including audio tapes of wiretapped
phone conversations, officers' surveillance observations and
witness testimony, conflicted with Wiggins' trial testimony.
Accordingly, the foregoing are fair comments on the evidence and no
objection was warranted. See Lugo v. State, 845 So. 2d 74, 107-08
(Fla. 2003) (where the evidence substantially proved defendant's
deceitful actions, the prosecutor's remarks questioning his
veracity were appropriate comments on the evidence); see generally
Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel has
no duty to raise issues which have little or no chance of success).

(b) Wiggins claims counsel failed to object to two improper
comments that bolstered the State's case and denigrated the
defendant.

The following transpired when the State suggested it only
charges guilty people:

And we're very prudent when we charge cases like that.
We're  just not going to charge somebody, well, that's
what might happen.
MR. PETIT: Objection, judge. May I reserve a motion?
THE COURT: Reserved.
MR. PETIT: Thank you, Your Honor.

(T. 2433-34).

The following transpired when the State argued Wiggins' theory

12

of entrapment was not credible:

> Ludicrous to believe that this guy, for $500 all of a
> sudden became, like, you know, agent of the devil for
> $500. Totally impossible.
> MR. PETIT: Objection, judge. And I reserve another
> motion.

(T. 2492); see [DE# 8, App. XX at 121] (motion for new trial).

Wiggins' claim that counsel failed to object when the State
bolstered its case with improper comments is refuted by the record.
Counsel immediately objected to the State's improper bolstering
comments. Wiggins' contention that counsel was ineffective with
regard to either of the foregoing comments lacks merit.

(c) Wiggins contends the prosecutor improperly vouched for the
credibility of State witnesses Raymond "Apple Head" Flanders
(cooperating co-defendant), Officer Key (surveillance) and Agent
White (undercover FDLE agent).

The prosecutor argued cooperating co-defendant Flanders was
credible because he pled guilty under an agreement that required
his truthful testimony in exchange for the possibility of a reduced
sentence:

> Apple Head is a criminal. All right. He came in
> here, he pled to life. He's gonna get a fifteen year
> plea..... Everything that he said explained the tapes and
> told you some of the other conspiracies that were going
> on at the time.... He's a criminal, just as Tavarence
> Wiggins is a criminal.... But he came in here and he
> testified truthfully to what he knew. He even came in and

13

told you the Metro Zoo incident, he really didn't know
much about that one. He was very, very candid with all of
you.

...

     And one thing that you need to ask yourself when
dealing with a witness like [Apple Head], his deal is to
testify truthfully. There is fourteen people charged in
this case. Why is he gonna lie about Tavarence Wiggins?
He was questioned. He was cross-examined. Nothing came up
about any animosity between him and Tavarence Wiggins.
Why is he gonna lie and say Tavarence Wiggins was driving
the car if it was anyone else other than Tavarence
Wiggins?

     Because he wasn't lying. He was telling you the
truth. Tavarence Wiggins was driving his car that day.
Okay. And all the circumstances round it indicate that.
(T. 2493-94).

The prosecutor argued Officer Key's surveillance observations
were accurate:

     You may want to think that Key's watch is an hour
off from everyone else's watch on the planet. However,
even though his watch could be off, 4:07 to 4:09 is still
two minutes later. And you may think Key's times are
wrong, but the bottom line that Key tells you here -- and
I submit to you that his times aren't wrong, folks. His
times are not wrong. He was there for a specific purpose
and that's to note the times the cars are coming and
going, and that's what he was doing. Okay. He wasn't
noting the people, but he was noting the cars that were
coming and going.

(T. 2504).

The prosecutor argued undercover FDLE Agent White was credible:

> And if you all want to believe that Special Agent Gaylon White of the Florida Department of Law Enforcement came in here and perjured himself to convict Tavarence Wiggins, then you all go into that jury room and you find him not guilty. Okay. Because I submit to you that this agent, who you saw testify, was telling you the absolute truth as to what happened.

(T. 2597).

"[T]he bar for granting habeas based on prosecutorial misconduct is a high one." Land v. Allen, 573 F.3d 1211 (11th Cir. 2009). Prosecutorial misconduct can only be a basis for relief if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Brooks v. Francis, 716 F.2d 780, 788 (11th Cir. 1983). To determine whether a prosecutor's arguments are sufficiently egregious to result in the denial of due process, the court considers the statements in the context of the entire proceeding, including: (1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors. Romine v. Head, 253 F.3d 1349, 1369-70 (11th Cir. 2001). A petitioner claiming counsel was ineffective is unable to demonstrate Strickland prejudice due to "his defense counsel's failure to object to prosecutorial misconduct that, itself, does not warrant reversal." Land, 573 F.3d at 1221.

In all three of the foregoing comments, the prosecutor argued the State's witnesses were credible based on the evidence. However, the prosecutor went further and suggested the witnesses told the truth because of who they are in relation to the State, that is, a witness under a plea deal, a police officer and an FDLE agent. Assuming these suggestions went beyond the bounds of propriety, these brief comments cannot be viewed as rendering the entire trial fundamentally unfair. During the two-and-a-half week trial, the jury heard and was able to consider a vast quantity of evidence including numerous audiotapes of wiretapped phone calls including calls from Wiggins, testimony from witnesses including investigating detectives, an undercover officer, a co-defendant, and Wiggins himself. In this context, the three brief comments at issue did not vitiate the fairness of the trial. See Land, 573 F.3d at 1220-21 (prosecutor's closing that described events that were not supported by any evidence exceeded the bounds of appropriate conduct but did not render the trial fundamentally unfair). Because the comments did not render the trial unfair, Wiggins has failed to demonstrate Strickland prejudice. Accordingly he is not entitled to relief on his claim that counsel was ineffective for failing to object to the foregoing. Land, 573 F.3d at 1221.

2) Motion to Suppress

Wiggins argues trial counsel failed to file a motion to suppress phone calls obtained through wiretaps that were recorded without legal basis. He contends the warrant to record phone calls from two of his co-defendants lacked a legal basis and there was insufficient evidence from the calls to charge and convict him.

At the start of trial with Wiggins present in the courtroom, defense counsel explained the defense would forego a motion to suppress the wiretap tapes in the interest of proceeding with a

speedy trial:

> MR. PETIT [defense counsel]: I have had this case for two
> years. And for about two years now I have reviewed of all
> the discovery Mr. Rosen provided to me in reference to
> the discovery, internal affairs evidence in this
> particular case.
>
> I don't believe it is to be warranted although my
> client is standing forth. I don't believe he wanted to go
> through the motions and take up this Court's time.
> THE COURT: I appreciate that, therefore, the wiretap
> evidence will be admitted without any objection as a
> technicality to admissibility.

(T. 6-8).

Reasonable counsel could have concluded this was a sound trial
strategy. Moreover, even if counsel had filed a motion to suppress
there is no reasonable probability the outcome would have been
different. Investigating officers received court orders from a
circuit judge to implement pen register and trap and trace devices
on two co-defendants' phones. (T. 401-05). The orders were
supported by detailed affidavits and were authenticated. (T. 409-
10, 417-18). An officer testified at trial he heard Wiggins' voice
at the time of his arrest and recognized the same voice on the
tapes. (T. 426). At trial Wiggins did not dispute his voice is
present on the tapes and admitted he participated in setting up
several drug rip-offs. He has failed to explain how counsel's
failure to file a motion to suppress the tapes under these
circumstances prejudiced him. See, e.g., Stancle v. McNeil, 2009 WL
2948394 (S.D. Fla. Sept. 14, 2009) (no prejudice due to counsel's
failure to move to suppress firearm where defendant voluntarily
admitted to an officer the firearm was his; noting federal law

17

recognizes that counsel cannot be deemed deficient for failing to pursue a meritless suppression motion); see generally Chandler, 240 F.3d at 917.

### 3) Alibi Witnesses

Wiggins argues trial counsel failed to call four alibi witnesses. He claims Sheila Jackson, Gail Taylor, Derrick Taylor, and Delman Taylor would have testified Wiggins was picking up his son from daycare between 3:50 and 4:15 PM on October 16, 1997. In addition, he asserts Jackson could have provided an attendance log proving Wiggins' son attended daycare that day, that Wiggins picked him up and at what time.

The Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability or realistic chance for success. Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1421-22 (March 24, 2009). "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980); West v. Sec'y, Dep't of Corr., 151 Fed. Appx. 820 (11th Cir. 2005). "[N]o absolute duty exists to investigate particular facts or a certain line of defense." Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000). Under Strickland, "counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance." Chandler, 218 F.3d at 1317.

Wiggins does not provide the witnesses' relationships to him or to the case or explain how they would have known if and when he picked up his son from daycare on October 16, 1997. Nor does he

explain Jackson's position at his son's daycare center or how she would have provided different records than those already presented at trial. The State subpoenaed Tonya Hodge, Assistant Director of Kiara Daycare Center, for the daycare's sign-in and attendance sheets. (T. 2250). She testified the center keeps sign-in sheets which contained no entry for Wiggins' son on the date in question. <u>See</u> (T. 2238, 2243). Hodge did not provide any attendance logs pursuant to the subpoena. (T. 2250). Wiggins fails to explain what records exist that were not presented at trial, what information they contain, and how that information would have been exculpatory.

Wiggins has failed to demonstrate prejudice because there is no reasonable probability the outcome would have been different if counsel had presented the alibi witnesses. Wiggins presented his alibi by testifying he was picking up his son from daycare when the undercover rip-off occurred. Co-defendant "Apple Head" Flanders testified to the contrary that Wiggins was actually one of the drivers during the rip-off. Flanders' testimony was supported by taped phone conversations and circumstantial evidence. Whether Wiggins was actually driving, however, is not determinative because he was charged as a principal. There was evidence Wiggins participated in the rip-off through the actions of co-defendant and ex-police officer Johnson even if he was not personally present at the offense. <u>See</u> (T. 2366-72) (charge conference discussion of alibi instruction). Therefore, even if witnesses had testified Wiggins was picking up his son from daycare when the rip-off occurred there is no reasonable probability the jury would have acquitted Wiggins. <u>See</u> <u>United States v. Andrews</u>, 953 F.2d 1312 (11th Cir. 1992) (counsel not ineffective for failing to subpoena alibi witnesses who would have only covered part of the period charged in the indictment and would not have directly refuted testimony of petitioner's involvement); <u>see also</u> <u>Evans v. State</u>,

19

995 So. 2d 933 (Fla. 2008) (state's theory was that the defendant planned the murder and was also the shooter; if the jury believed defendant had an alibi for the time of the crime there was still sufficient evidence of his liability as a principal for the jury to find him guilty).

4) <u>Entrapment Instruction</u>

Wiggins argues trial counsel failed to request an entrapment jury instruction as to all charges. Wiggins contends such an instruction is appropriate because he admitted taking part in some of the alleged crimes in the conspiracy, and therefore the entrapment defense applied to all seven counts.

"Florida courts have consistently applied the rule that one who denies committing the act that constitutes the offense cannot claim entrapment." <u>Wilson v. State</u>, 577 So. 2d 1300, 1300 (Fla. 1991). Although not bound by <u>Mathews v. United States</u>, 485 U.S. 58 (1988), Florida courts have found its policy instructive. <u>Wilson</u>, 577 So. 2d at 1301 ("<u>Mathews</u> is not controlling authority because it was based on a construction of the Federal Rules of Criminal Procedure and did not purport to construe the United States Constitution."). Therefore, in Florida, "a request for an instruction on entrapment when there is evidence to support the defense should be refused only if the defendant has denied under oath the acts constituting the crime that is charged." <u>Wilson</u>, 577 So. 2d at 1302.

Defense counsel requested an entrapment instruction on the two counts for which Wiggins admitted involvement (Fice and Duval) and the RICO counts relating to those two predicate acts. (T. 2373-79). The trial court agreed to give the instruction as to those two predicate acts but not as to RICO or any of the other predicate

offenses. (T. 2385). Defense counsel objected and moved for a new trial, arguing he should have been granted entrapment instruction regarding Count II. [DE# 8, App. XX at 121]. Counsel's request for entrapment jury instructions for the offenses which Wiggins admitted at trial was consistent with Florida law. See Wilson, 577 So. 2d at 1300. Wiggins has failed to demonstrate counsel was deficient or explain how he was prejudiced by any alleged deficiency.

5) <u>Alibi Instruction</u>

Wiggins argues trial counsel failed to preserve for appeal the trial court's denial of his request for an alibi jury instruction.

This claim is refuted by the record. Counsel requested an alibi jury instruction at the charge conference as to Counts XV and XVI. (T. 2366). The trial court denied the instruction because there was a question as to whether Wiggins committed these offenses as a principal. (T. 2366-72). By requesting the jury instruction, counsel preserved the issue for appellate review and was not deficient. <u>See</u> <u>Saulsberry v. State</u>, 398 So. 2d 1017 (Fla. 5th DCA 1981) (defendant sufficiently preserved trial court's refusal to give jury instruction by requesting the instruction and objecting on the record before the jury was charged; no need to renew the objection before deliberations began); Fla. R. Crim. P. 3.390.

6) <u>Principal Instruction</u>

Wiggins argues trial counsel should have objected to the principal instruction in regards to trafficking and RICO conspiracy. He argues the instruction essentially directed the verdict for the State by excusing the State from proving Wiggins' guilty knowledge of the presence of cocaine and of its illegal nature. Wiggins cites reversals obtained by separately-tried co-

defendants Evans and McKay on these grounds.

Florida law provides that "guilty knowledge" is an element of possession and must be proved beyond a reasonable doubt. Garcia v. State, 901 So. 2d 788, 793 (Fla. 2005); Chicone v. State, 684 So. 2d 736 (Fla. 1996). This element includes knowledge of both the presence and illicit nature of the substance possessed; the jury should be instructed on both. Garcia, 901 So. 2d at 793.

Separately tried co-defendant Evans appealed his conspiracy conviction on the grounds that the jury was instructed on principal and conspiracy without explaining that the principal theory does not apply to conspiracy, that is, the defendant actually has to be part of the conspiracy for conviction of that offense. The Third District reversed because "the question whether defendant Evans was a member of the conspiracy on the charged counts was a disputed issue at trial. The problem with the giving of the principal instruction is that it allowed the jury to find the defendant to be a member of the conspiracy if the jury concluded that he had done anything to aid or abet the underlying crime." Evans v. State, 985 So. 2d 1105, 1107 (Fla. 3d DCA 2007). The Third District ruled similarly in the case of co-defendant McKay. See McKay v. State, 988 So. 2d 51 (Fla. 3d DCA 2008).

A new trial is not warranted in the instant case because Wiggins admitted involvement in two predicate acts at trial. Wiggins testified he helped set up two drug rip-offs because he felt pressured by a loan he owed one of the individuals involved in drug-ripoffs. His defense to these two predicate offenses was that he was entrapped by a confidential informant. He denied involvement in several other predicate acts. Because Wiggins admitted his

involvement the instant case is distinguishable from Evans.[3] Counsel was not deficient for failing to object to the principal instruction where Wiggins admitted his involvement at trial.

Even if giving the principal instruction was an error, Wiggins would be unable to demonstrate prejudice. The jury found Wiggins not guilty of the two underlying offenses he admitted, but found guilty of conspiracy and other predicate acts. The jury could have based its guilty verdict for conspiracy on the predicate acts Wiggins admitted, but for which the jury found him not guilty. See (T. 2701) (jury question during deliberations: "does the defendant have to be convicted of two predicate acts to be found guilty of conspiracy to violate Florida RICO Act."). Such a verdict is consistent with Florida and federal law. Corbo v. State, 347 So. 2d 133 (Fla. 3d DCA 1977) (apparent inconsistency in verdict is not grounds for reversal where the jury found defendant not guilty of charged overt acts but guilty of conspiracy); see Dunn v. United States, 284 U.S. 390 (1932); Goodwin v. State, 26 So. 2d 898 (1946) (criminal conviction will not be reversed for inconsistency). Due to Wiggins' admission at trial he set up drug rip-offs, he cannot demonstrate counsel was deficient for failing to object to the principal instruction or that this alleged error prejudiced him.

7) Trafficking Instruction

Wiggins argues trial counsel should have objected to the standard cocaine trafficking jury instruction which failed to define or explain guilty knowledge.

Federal habeas relief is available only to correct constitutional injury. 28 U.S.C. §§ 2241(c)(3), 2254(a); see

---

[3] McKay does not contain details about the evidence or defense but simply states the case is analogous to and governed by Evans.

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding errors that do not infringe a defendant's constitutional rights provide no basis for federal habeas corpus relief). "Mere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." Barclay v. Florida, 463 U.S. 939, 958-59 (1983) (citations omitted). Questions of state law and procedure "rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1053-54 (11th Cir. 1983)). In the context of jury instructions, courts on federal habeas review are constrained to determine only whether a challenged instruction, viewed in the context of both the entire charge and the trial record, "so infected the entire trial that the resulting conviction violate[d] due process." Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Wiggins complains the standard jury instructions on cocaine possession failed to correctly state Florida law on guilty knowledge as established by Garcia v. State, 901 So. 2d 788 (Fla. 2005). See also Chicone v. State, 684 So. 2d 736 (Fla. 1996). This claimed error of state law provides no basis for habeas relief. Erickson v. Sec'y, Dep't of Corr., 243 Fed. Appx. 524 (11th Cir. 2007) (habeas relief unavailable for claim that jury instruction was incorrect under state law).

8) Prior Convictions

Wiggins claims trial counsel was ineffective because he failed to ameliorate the negative effect of his prior convictions. He

claims the jury should have been told that Wiggins entered pleas in his prior cases because he was guilty and went to trial in this case because he is not guilty.

During Wiggins' direct testimony, the following transpired:

[by defense counsel]: Sir, have you ever been convicted of a felony?
[by Wiggins]: Yes, I have.
Q. And can you tell the folks of the jury how many times?
A. Five times.
Q. And have you ever been involved or convicted of a crime involving dishonesty?
A. One time.

(T. 1978-79).

Under Florida law, the State may impeach a witness, including a testifying defendant, with questions about the existence and number of his prior convictions. Fulton v. State, 335 So. 2d 280 (Fla. 1976). It is common practice among defense counsel to preemptively disclose the convictions on direct examination. McCrae v. State, 510 So. 2d 874 (Fla. 1987); Lawhorne v. State, 500 So. 2d 519, 520 (Fla. 1986) ("anticipatory rehabilitation" is permissible to "take the wind out of the sails" of the anticipated impeachment).

In the instant case, defense counsel chose to bury this information in the midst of Wiggins' direct testimony. No federal constitutional consideration requires effective counsel to approach the matter in a certain manner. Reasonable counsel could have decided to minimize the issue rather than belabor details of Wiggins' five prior offenses and potentially open the door to

cross-examination on details of the offenses. See <u>Lamarca v. Sec'y,</u>
<u>Dep't of Corr.</u>, 568 F.3d 929 (11th Cir. 2009) (counsel was not
ineffective for limiting cross-examination of prosecution witness
to avoid opening the door to additional incriminating evidence
regarding defendant's prior crimes); <u>McCrae v. State</u>, 395 So. 2d
1145, 1151 (Fla. 1980) (scope of cross-examination is generally no
broader than the scope of direct, however, the state is entitled to
question defendant about the nature of his prior felony convictions
to negate innuendoes by counsel). Moreover, in light of the
evidence introduced at trial, there is no reasonable probability
that the outcome would have been different had counsel approached
Wiggins' prior convictions differently.

9) <u>Illegal Sentence</u>

Wiggins argues trial counsel failed to object when the court
imposed a habitual violent felony offender sentence without proper
written notice from the State. Moreover, Wiggins contends the trial
court imposed the sentence under the mistaken belief that such a
sentence was mandatory.

The State court rejected these claims relating to sentencing
because they were refuted by the record. [DE# 8, Apps. CC, EE].
Specifically, the court found the State had, in fact filed a notice
of intent to seek a habitual violent felony offender sentence, and
the parties acknowledged the trial court had discretion whether to
impose a habitualized sentence. These factual conclusions are
presumptively correct. <u>Provenzano v. Singletary</u>, 148 F.3d 1327,
1330 (11th Cir. 1998) (a state court's decision concerning an issue
of fact is presumptively correct). Moreover, these findings are
supported by the record. <u>See</u> (T. 2716) (the prosecutor stating on
the record he had filed written notice of intent to seek a habitual
violent felony offender sentence); [DE# 8, App. S, attached

sentencing transcript at 72] (trial court indicating it was "shocked" at the testimony, and a life sentence was "fair"). The State court's conclusion that counsel was not ineffective for failing to object where nothing objectionable occurred is not contrary to or an unreasonable application of Strickland. See Chandler, 240 F.3d at 917 (counsel is not ineffective for failing to raise a non-meritorious objection).

Trial Court Error

10) Illegal Sentence

Wiggins argues his habitual violent felony offender sentences were illegally imposed without due process because he was not provided written notice and because the court thought it lacked discretion to impose a lower sentence. Wiggins has failed to raise a cognizable habeas claim.

It is well settled that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Estelle, 502 U.S. 62. This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is "couched in terms of equal protection and due process." Id. at 1508 (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Here, Wiggins argues the State court erroneously imposed a habitualized sentence. Any determination regarding Wiggins' sentencing under Florida law is a state-law issue that is not cognizable on this habeas petition. See Middleton v. Sec'y, Dep't of Corr., 2008 WL 450007 (M.D. Fla. Feb. 15, 2008) ("Whether a state's notice of intent to seek habitual sentencing is adequate to impose a habitual sentence ... is solely a matter within the province of the Florida courts."); see § 775.084, Fla. Stat.

(criteria for habitual violent felony offender sentencing). Wiggins has stated no claim for which federal habeas corpus relief is available. See Branan, 861 F.2d at 1508.

<u>Ineffective Assistance of Appellate Counsel</u>

11) <u>Jury Instruction</u>

Wiggins contends appellate counsel was ineffective for failing to raise the principal jury instruction regarding RICO conspiracy on appeal as fundamental error.

As set forth in section 6, supra, no error was evident. Accordingly, counsel cannot be deemed ineffective for failing to raise it as fundamental error on appeal.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 1st day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Tavarence Wiggins, <u>pro</u> <u>se</u>
     DC# 457570
     Martin Correctional Institution
     1150 SW Allapattah Road
     Indiantown, FL 34956-4397

     Rolando A. Soler, AAG
     Office of the Attorney General
     444 Brickell Ave., Suite 650
     Miami, FL 33131