**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 08-22473-CIV-SEITZ/WHITE

TAVARENCE WIGGINS,

        Petitioner,

v.

WALTER MCNEIL,

        Respondent.

_____/

## OPINION AND ORDER AFFIRMING IN PART AND REJECTING IN PART MAGISTRATE'S REPORT, OVERRULING IN PART AND GRANTING IN PART PETITIONER'S OBJECTIONS AND GRANTING IN PART HABEAS CORPUS RELIEF

Tavarence Wiggins was sentenced to life in prison for his involvement in a criminal organization that robbed and stole from drug dealers. The organization set up drug transactions with potential sellers/purchasers and had a corrupt Miami Dade police officer relieve the unwitting participants of their narcotics and/or U.S. currency. The scheme unraveled when the corrupt officer robbed an under cover agent posing as a drug dealer. In this matter, Wiggins challenges the result of his criminal activities: a life sentence in prison. After the denial of numerous appeals and motions for post-conviction relief in the Florida state court system, Wiggins now seeks relief from this Court. Wiggins contends that his conviction and sentence violate the United States Constitution and asks this Court to set them both aside. In this instance, Wiggins' punishment was not entirely borne of Wiggins' criminal activities, but resulted, in part, from the ineffective assistance of appellate counsel as asserted in claim eleven. Accordingly, Wiggins' request for habeas relief is granted in part and denied in part as set forth below.

## I.   BACKGROUND

United States Magistrate Judge Patrick A. White included a long and detailed recitation

of the procedural background of this case in his Report.  The Court will not repeat all of that

information here, but will highlight certain portions of the procedural record, and include

sufficient factual background information to provide context for the discussion that follows.

On September 23, 1999, the State of Florida filed a seventeen count Information against

Wiggins and thirteen other defendants[1] for their participation in numerous "rip-offs" of drug

dealers and purchasers.  Wiggins and several co-defendants were charged in a substantive RICO

count (Count I) and with conspiracy to commit RICO (Count II).  The remaining Counts (III-

XVII) related to thirteen different "rip-offs" allegedly contemplated and/or perpetrated by the

group.[2]  Wiggins was charged in four specific "rip-offs" known to all as the "Fat Victim"

incident, the "Fice Incident," the "Undercover Operation," and the "Jacksonville Conspiracy."[3]

The Substantive charges associated with these incidents were: Conspiracy to Commit Grand

Theft (Count IX - Fat Victim); Conspiracy to Commit Armed Robbery (Count X - Fice Incident);

Armed Cocaine Trafficking and Armed Robbery (Counts XV and XVI - Undercover Operation);

---

[1]Wiggins' co-defendants were Trevin Johnson, Terri Davis, Joseph Howard, Ranier Gillis, Wallace Johnson, Clarence Wooten, Elliott Flanders, Ernest McKay, Daniel Hilbert, Kanisky Evans, Bobby Rogers, Travis Baker and Marvin Baker.

[2]The thirteen rip-offs also constitute the thirteen predicate acts (labeled A-M) identified in the RICO substantive Count.

[3]The Fat Victim incident relates to Count IX and Predicate Act G; the Fice Incident relates to Count X and Predicate Act H; the Undercover Operation relates to Counts XV and XVI and Predicate Act L; and the Jacksonville Conspiracy relates to Count XVII and Predicate Act M.  The names for the remaining rip-offs and the corresponding predicate acts were: Edsel Harris (Count III; PA-A); Byron Daniel; Flea Market Incident (Count V; PA- C); Howard Hampton #1 (Count VI; PA- D); Howard Hampton #2 (Count VII; PA- E); Sugar Incident (Count VIII; PA- F); Metrozoo (Count XII; PA- I); Burger King (Count XIII; PA- J); and October 15, 1997 Conspiracy (Count XIV; PA-K).

and Conspiracy to Commit Grand Theft (Count XVII - Jacksonville Conspiracy). Each count of the Information, except for Count II, also charged the defendants with being a principal in the first degree under Florida Statute §777.011.[4] That statute makes an aider and abetter a principal, who is equally guilty as the person who actually perpetrates the crime, whether or not the principal was even present during the commission of the offense.[5] *Id.*

The defendants that proceeded to trial were severed from their co-defendants and tried separately. Wiggins' trial counsel, Michael Petit (hereinafter referred to as "trial counsel"), represented him during a three-week trial commencing in November 1999 before the Honorable Robert M. Deehl. The State's evidence against Wiggins included intercepted telephone calls and a co-operating co-defendant, Raymond Flanders. Flanders testified, *inter alia*, that Wiggins acted as a driver during the Undercover Operation. In that incident Wiggins and Flanders set up and met with who they believed were Atlanta drug dealers in possession of two kilograms of cocaine and $16,000. Wiggins drove Flanders to meet the Atlanta drug dealers, actually undercover operatives with the Florida Department of Law Enforcement, at a nearby B.J.'s Wholesale Club. After speaking with the undercover officers, Flanders suggested they complete the transaction elsewhere and instructed the undercover operatives to follow his car to a different location. Wiggins then drove past a prearranged location where the corrupt Miami Dade Police

---

[4]Every count in the Information includes a reference to Florida Statute §777.011 except for Count II, conspiracy to commit RICO.

[5]Florida Statute §777.011 provides:
Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Officer, co-Defendant Trevin Johnson, was waiting in his squad car. Johnson activated his lights, pulled over the undercover operatives and confiscated their cocaine and U.S. currency. Authorities conducting surveillance then arrested Johnson, ending the "rip offs" and the organization's activities.

Wiggins testified in his own defense and admitted his involvement in the Fice and Jacksonville incidents, but claimed he was picking up his son from day care at the time of the Undercover Operation.[6]  In other words, his trial strategy consisted of asserting an entrapment defense to the Fice and Jacksonville incidents and an alibi for the Undercover Operation. During the jury instruction charge conference, trial counsel requested an entrapment instruction for the Fice Incident and Jacksonville Conspiracy and to the extent those incidents would support the RICO substantive and conspiracy counts. Judge Deehl rejected the request as to the RICO counts stating that an entrapment instruction is not available where a defendant denies committing the offense. Tr. 2382-85. Judge Deehl concluded that Wiggins only admitted his participation in the Fice and Jacksonville incidents and not the RICO conspiracy as a whole. The State also requested and received a jury instruction on Principals, which was not limited to any particular Count. *Id.* at 2320. Wiggins' attorney did not object to the principal instruction. *Id.*

The jury found Wiggins guilty of the RICO conspiracy and the two counts comprising the Undercover Operation - Armed Trafficking in Cocaine and Armed Robbery. He was acquitted of all other charges.[7]  Wiggins' numerous and repeated challenges to his conviction

---

[6]Wiggins claimed he was present for, but had no involvement in, the Fat Victim incident. (Trial Transcript "Tr." 2008-20, 2090-96, 2157 and 2194-97).

[7]The jury acquitted Wiggins of the RICO substantive Count and the Counts related to the Fat Victim incident, the Fice Incident and the Jacksonville Conspiracy.

began in earnest the day after the guilty verdict when his counsel informed Judge Deehl that they would seek a new trial for the refusal to give the entrapment instruction as to the RICO conspiracy. [Tr. at pp. 2731-33]. That same day, the prosecuting attorney served defense counsel with a Notice of Intent to Seek Enhanced Penalty pursuant to Florida Statute 775.084, which gave notice of the State's intent to sentence Wiggins to life in prison as a habitual violent offender. *Id.* at pp. 2716-17. As a result of the State's decision to seek a sentencing enhancement, Judge Deehl delayed the sentencing. At the sentencing two months later, Judge Deehl denied the motion for a new trial and sentenced Wiggins as a habitual violent offender to life in prison with fifteen-year minimum mandatory on Counts II (conspiracy to commit RICO) and XV (Cocaine Trafficking), concurrent, and thirty years with a ten-year minimum mandatory as to Count XVI (Armed Robbery). [App. S, pp. 72-73].

For the next eight years Wiggins unsuccessfully challenged his conviction and sentence, through both direct motions and appeals and post-conviction motions and appeals.[8] The state court has repeatedly denied all relief requested by Wiggins. Failing to gain any traction in the state court system, Wiggins then turned his attention to federal court by filing a Petition for a writ

---

[8]Wiggins post-conviction filings include a direct appeal to Florida's Third District Court of Appeals, which affirmed the trial court on August 8, 2001. *Wiggins v. State*, 790 So.2d 610 (Fla. 3d DCA 2001). Wiggins also filed a Petition for Writ of Habeas Corpus that the Third District denied. *Wiggins v. Moore*, 829 So.2d 227 (Fla. 3d DCA Oct. 11, 2002) (No. 3D02-1307). The Florida Supreme Court, however, granted mandamus and reinstated the petition because the Third District Court of Appeals denied the petition without allowing Wiggins to file a Reply brief. *Wiggins v. Crosby*, 860 So.2d 980 (Fla. Oct. 27, 2003) (Table, No. SC03-191). After Wiggins filed a Reply brief, the Third District denied the petition a second time. *Wiggins v. Moore*, 871 So.2d 890 (Fla. 3d DCA Apr. 7, 2004) (Table, NO. 3D02-1307). Wiggins filed a motion to correct illegal sentence on March 24, 2003, that the trial court summarily denied on April 25 and May 14, 2003. The appellate court affirmed without ordering the State to respond. *Wiggins v. State*, 852 So.2d 247 (Fla. 3d DCA 2003). Wiggins filed an Amended Motion to Vacate his Sentence on August 22, 2003, which the court denied for the reasons set forth in the State's response. [DE-8, App. EE]. The Third District thereafter affirmed and denied rehearing. *Wiggins v. State*, 986 So.2d 616 (Fla. 3d DCA 2008). Wiggins filed habeas petitions and supplemental motions on November 5, 2007, and January 28, 2008. All of the petitions and supplements were denied.

of habeas corpus pursuant to 28 U.S.C. § 2254. Wiggins' Petition contained eleven claims for relief, ten of those were based on violations of the 6th Amendment right to effective assistance of counsel.[9]

This Court referred the matter to Magistrate Judge White for a Report and Recommendation. Magistrate Judge White's Report recommended that the Court deny all eleven claims for relief. [DE-12]. Magistrate Judge White concluded that Claims Seven and Ten failed to state a claim for *habeas* relief and that Wiggins failed to establish a violation of *Strickland v. Washington* as to all of the remaining claims. Wiggins timely submitted a lengthy objection to Magistrate Judge White's Report. The objections address each of Wiggins' eleven claims. The State of Florida neither objected to the Report nor responded to Wiggins' objections.

## II.    LEGAL STANDARD

"A [district] judge may, under 28 U.S.C. § 636(b), refer [a §2254] petition to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition." Rule 8(b), Rules Governing § 2254 Cases in the United States District Courts. If the Petitioner timely files objections to the magistrate judge's report, the district judge "must determine de novo any proposed finding or recommendation to which objection is made." *Id.* Parties filing objections to a magistrate's report and recommendation must specifically identify

---

[9]Wiggins asserts the following claims in his § 2254 Petition: Claim One - trial counsel failed to object to the prosecution's improper closing arguments (Pet., pp. 5-6 [DE-1]); Claim Two - trial counsel failed to file a motion to suppress intercepted telephone calls (*id.* at pp. 7-8); Claim Three - trial counsel failed to call four witnesses in support of alibi defense (*id.* at pp. 9-10); Claim Four - trial counsel failed to request an entrapment instruction as to all Counts (*id.* at pp. 10-11); Claim Five - trial counsel failed to request an Alibi instruction (*id.* at pp. 12-13); Claim Six - trial counsel failed to object to trial court instructing the jury on principal theory as it relates to RICO Conspiracy (Count II) and Trafficking in Cocaine (Count XV) (*id.* at pp. 13-15); Claim Seven - trial counsel failed to object to flawed Trafficking in Cocaine jury instruction (*id.* at pp. 15-16); Claim Eight - trial counsel failed to ameliorate the negative effect of Wiggins' prior convictions (*id.* at pp. 15-16); Claim Nine - trial counsel failed to object to life sentence as Habitual Violent Felony Offender where Prosecutor never gave notice of his intent to seek the enhancement and where the trial court believed it had no discretion in imposing life sentence (*id.* at pp. 17-18); Claim Ten - Wiggins' sentence was illegally imposed without due process (*id.* at pp. 18-19); and Claim Eleven - appellate counsel failed to appeal trial court's decision to give principal jury instruction in connection with a RICO conspiracy count (*id.* at pp. 20-21).

those findings objected to. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009).

Frivolous, conclusive, or general objections need not be considered by the district court. *Id.* The

district judge is given discretion whether to "accept, reject, or modify any proposed finding or

recommendation." Rule 8(b), Rules Governing § 2254 Cases in the United States District

Courts. Further, "a district court has discretion to decline to consider a party's argument when

that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d

1287, 1292 (11th Cir. 2009).

### III.   LEGAL ANALYSIS

#### A.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

##### (1).   FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT

In his first claim for relief, Wiggins argued that his trial counsel was ineffective for

failing to object to several statements the prosecuting attorney made during closing arguments.

Magistrate Judge White organized the prosecutorial statements into three categories: (1)

comments identifying Wiggins as a liar; (2) comments bolstering the state's case and denigrating

Wiggins; and (3) comments vouching for the credibility of the state's witnesses. With respect to

the first category of prosecutorial comments - those referring to Wiggins as a liar - Magistrate

Judge White concluded that counsel was not ineffective for failing to object because the

prosecutor's statements were "fair comments on the evidence and no objection was warranted."

Rep., p. 12 [DE-12]. Wiggins objects and argues that he has made a colorable claim for

ineffective assistance and the matter should be set for a prompt evidentiary hearing. *See* Obj., p.

7 [DE-16],

Wiggins seriously misapprehends this Court's standard of review for a §2254 petition.

-7-

This Court does not merely review the claims and ask whether Wiggins has made a colorable claim under *Strickland v. Washington*. Rather, this Court's review under the AEDPA asks whether Wiggins has shown there was "no reasonable basis" for the state court's decision. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1402 (2011); *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).[10] The Supreme Court describes this review as "doubly deferential" because it requires federal courts to take a "highly deferential look at counsel's performance [under *Strickland*], through the deferential lens of §2254(d)." *Pinholster*, 131 S.Ct. at 1403(citation and quotations omitted). As the Supreme Court stated in *Richter*:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

131 S.Ct. at 788.

It is therefore not enough for Wiggins to show that the state court was wrong in rejecting his *Strickland* claims. Rather, Wiggins "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87. Stated differently, if "fairminded jurists could disagree on the correctness of the state court's decision[,]" Wiggins is not entitled to federal habeas relief. *Id.* at 786.

As the Supreme Court has recognized, "[i]f this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S.Ct. at 786. "As amended by AEDPA, § 2254(d)

---

[10]Hereinafter referred to as "*Richter*."

stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* at 786.  Section 2254(d) reflects the view that "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (citations omitted).  "Section 2254(d) ... ensure[s] that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Id.*

In determining whether this Court should overturn the state court's rejection of Wiggins' claims, this Court must "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1237 (11th Cir. 2011).  Where, as here, the highest state court decision summarily disposed of Wiggins's claims, §2254(d) still applies.[11]  The Supreme Court has described a federal court's role when there has been a summary denial as:

> [A] habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].

*Pinholster*, 131 S.Ct. at 1402.

Based on the Court's thorough review of the entire record, Wiggins has failed to meet the high threshold for habeas relief on the first category of comments in his first claim.  The theory identified by Magistrate Judge White - that the statements were "fair comments on the evidence" could have supported the Florida Appellate court's decision to deny this claim.  All of the prosecutors' comments identified by Wiggins were made in reference to the evidence.  For

---

[11]The highest state court for the numerous decisions here was the Third District Court of Appeals.

example, when the prosecutor referred to Wiggins as a liar it was in relation to Wiggins testifying

that he made a phone call to another witness, but no record of the call existed.  *Id.* at p. 2507.

Therefore, in calling Wiggins a liar, the prosecutor was "merely submitting to the jury a

conclusion that he or she is arguing can be drawn from the evidence[,]" which is not improper.

*Davis v. State*, 698 So.2d 1182 (Fla. 1997) (per curiam)("It was for the jury to decide what

conclusion to draw from the evidence and the prosecutor was merely submitting his view of the

evidence to them for consideration."); *see also Craig v. State*, 510 So.2d 857, 865 (Fla.

1987)(same).  The Court affirms Magistrate Judge White's Report as to the first category of

statements in the first claim.  As to the second category of statements, Magistrate Judge White

concluded the record refuted any argument that trial counsel failed to object during closing

arguments because counsel had, in fact, lodged an objection to the comments.  Report, p. 11

[DE-12].  Wiggins's response to the Report simply ignores this portion of Magistrate Judge

White's analysis.  Accordingly, the Court overrules the objection, accepts the portion of the

Report and finds that the record refutes Wiggins's arguments that trial counsel failed to object to

these prosecutorial comments.[12]

The third category of statements, those where the prosecutor allegedly vouched for the

credibility of the state's witnesses, also provide no basis for relief.  Wiggins maintains that

Magistrate Judge White erred in finding no fault with trial counsel's failure to object to the

prosecutor "vouching" for Raymond Flanders ("Flanders"), Officer Ronnie Key and Agent White

during closing arguments.  For example, Wiggins argues that the prosecutor vouched for a

---

[12]Trial counsel not only contemporaneously objected to the "agent of the devil" comment, but also moved
for mistrial following closing arguments based on the same comment.  Tr. at 2619-20.

cooperating co-defendant Flanders, when he said, "I want to talk a little bit about [Flanders]. .. He's a criminal, just as [ ] Wiggins is a criminal. Okay. But he came in here and he testified truthfully to what he knew. ... he wasn't lying. He was telling you the truth." Obj., p. 4 [DE-16].

Wiggins's citation to isolated portions of the record, however, misrepresents the entirety of the prosecutor's statements during closing arguments, and the context in which those statements were made. Immediately following the statements cited by Wiggins, the prosecutor states that Flanders "was telling [ ] the truth[,]" and adds "Wiggins was driving his car that day. Okay. And all the circumstances round it indicate that." Tr. 2494. The "circumstances" identified by the prosecutor included evidence that directly contradicted Wiggins alibi that he was driving a different automobile and picking up his son at day care. *Id.* at 2495-2507. The prosecutor here was not simply arguing that Flanders was truthful because he was a state's witness, he was arguing that based on the evidence, Flanders's testimony was worthy of belief. *Miller v. State,* 926 So.2d 1243, 1254-55 (Fla. 2006) (an attorney is allowed to argue that a witness was truthful so long as the argument is based on reasonable inferences from the evidence). For all three witnesses, the prosecutor's statements were based on the evidence and the inferences to be draw therefrom. Accordingly, the prosecutor's arguments were  proper and counsel's failure to object to those arguments would not constitute ineffective counsel. *Craig,* 510 So.2d at 865; *see also Miller,* 926 So.2d at 1255(finding no error and no ineffective assistance where counsel failed to object to the prosecutor arguing a witnesses' testimony was worthy of belief, where the argument was based on evidence.).

That these statements were proper and required no objection represents a reasonable theory supporting the Florida appellate court's decision to reject Wiggins' *Strickland* claim.

-11-

*Richter,* 131 S.Ct. at 788. The Court finds that fairminded jurists could disagree on the correctness of the state court's decision, and therefore, Wiggins is not entitled to federal habeas relief on this claim. *Id.* at 786.

### (2).   FAILURE TO FILE A MOTION TO SUPPRESS INTERCEPTED CALLS

Magistrate Judge White also recommends that the Court deny the second ineffective assistance of counsel claim - that counsel was deficient for failing to file a motion to suppress wiretap evidence. Wiggins objects to this recommendation, but provides no analysis that directly addresses Magistrate Judge White's discussion. Instead, Wiggins argues that "[h]ad the motion to suppress been filed and denied, Wiggins could have accepted the 15-year term and reserved his right to appeal the dispositive motion to suppress." *See* Obj., p. 9. Thus, Wiggins is not arguing that his counsel was ineffective for failing to file a motion to suppress the wire tap evidence because such a motion might have been successful. Instead, Wiggins makes the unusual argument that his counsel was ineffective for failing to file a motion to suppress, a motion that he expected to be denied, because Wiggins would have accepted a plea deal following the denial of that motion. Wiggins raises this issue for the first time in his objections to Magistrate Judge White's Report, and the Court therefore will decline to consider these arguments. *Williams,* 557 F.3d at 1292("a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). The Court therefore adopts Magistrate Judge White's analysis denying this claim.[13]

---

[13] Even assuming that counsel was ineffective, the outcome here would be no different. Wiggins' unsubstantiated argument in his brief that he would have accepted a plea deal provides no basis for relief. *See Diaz v. United States,* 930 F.2d 832 (11th Cir. 1991) (a movant's post-conviction testimony concerning his previous desire to plead is insufficient without objective evidence that he would have accepted a plea.). Thus, Wiggins cannot demonstrate prejudice under *Strickland. See Lalani v. United States,* 315 Fed.Appx. 858, 860-61 (11th Cir. 2009)("To show prejudice after a rejected plea, an individual must establish a reasonable probability that, absent

### (3). FAILURE TO CALL ALIBI WITNESSES

Magistrate Judge White also rejected Wiggins's third claim, that his counsel was ineffective for failing to investigate and call Sheila Jackson, Gail Taylor, Derrick Taylor and Delman Taylor as alibi witnesses. Wiggins asserts that Jackson, Wiggins' son's day-care teacher, would have testified that Wiggins picked his son up from her class "at or about 3:50 p.m. to 4:15 p.m" on October 16, 1997. Ms. Jackson possessed classroom logs to support her testimony. The three Taylors are Wiggins' son's grandmother and uncles. They would have testified that they normally pick up Wiggins' son from daycare but were all unavailable on October 16, 2007.

Even assuming[14] that these witnesses would testify in the manner suggested by Wiggins, the Court must affirm Magistrate Judge White's recommendation to deny habeas relief as to this claim. The collective testimony of the Taylor witnesses would merely establish that they did not pick up Wiggins' son from day care on October 16, 1997. Their proposed testimony would not establish that Wiggins actually picked up his son, or whether he did so during the relevant time frame - between 3:50 and 4:15 p.m.[15] Moreover, the teacher's testimony would merely provide a counterpoint for the testimony the jury heard from Tonya Hodge, the Assistant Director of the

---

counsel's alleged ineffective assistance, he would have accepted the plea agreement.").

[14]A court need not hold an evidentiary hearing where, assuming the witnesses would testify in the manner suggested by the movant, the movant would still not be entitled to habeas relief. *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2000) ("[A]n evidentiary hearing is not required unless [the petitioner] can demonstrate that his factual allegations, if proven, would indicate that the state courts acted contrary to, or unreasonably applied, clearly established law when they rejected his ineffective assistance of counsel claim."); *see also Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1939-40 (2007).

[15]The one witness who could provide eye witness testimony to corroborate Wiggins' version of events, his brother, Terrance Green, was listed as an alibi witness for the defense. Tr. at 2728. Trial counsel did not call Mr. Green as a witness. Wiggins, however, makes no claim that trial counsel was ineffective for failing to call Mr. Green.

day care center.  Hodge testified that the center keeps sign-in sheets and those sheets contained no entry for Wiggins' son on the date in question. Given the wide range of acceptable trial strategies, this Court cannot conclude that trial counsel's decision to not call these witnesses constituted ineffective assistance of counsel.  These arguments could have supported the state court's decision to deny relief.  Because fair minded jurists could disagree over the correctness of that decision, Wiggins is not entitled to federal habeas relief on this claim. *Richter*, 131 S.Ct. at 786.[16]

### (4).   FAILURE TO REQUEST AN ENTRAPMENT INSTRUCTION AS TO ALL COUNTS

At trial, Wiggins' counsel requested an entrapment jury instruction as to the Fice Incident and Jacksonville Conspiracy, and to the portions of the RICO substantive and conspiracy counts related to those incidents.  The trial court gave the entrapment instruction as to the Fice and Jacksonville incidents, but denied the request as to the two RICO counts.  In his habeas petition, Wiggins argued that his trial counsel erred by failing to request that the entrapment jury instruction applied to all seven counts.  Magistrate Judge White concluded that trial counsel provided effective assistance because he requested the entrapment instruction for the RICO counts (which the trial court denied), the Fice Incident and the Jacksonville Conspiracy. Magistrate Judge White found no fault with trial counsel failing to request an entrapment instruction as to the Undercover Incident as Wiggins was not entitled to the instruction for the two Counts associated with that incident.

---

[16]Even if the Court were to find that trial counsel's failure to call these witnesses was deficient, it was not contrary to or an unreasonable application of clearly established federal law for the Florida appellate court to determine that Wiggins failed to satisfy the prejudice prong.  The Court will affirm and adopt Magistrate Judge White's analysis and conclusion that Wiggins failed to demonstrate prejudice on this issue.

The Court affirms and adopts Magistrate Judge White's conclusion that trial counsel performed effectively.[17] Wiggins was not entitled to an entrapment instruction related to the Undercover Operation because he did not admit to aiding and abetting the two crimes associated with that event. *Wilson v. State*, 577 So.2d 1300 (Fla. 1991)("Florida courts have consistently applied the rule that one who denies committing the act that constitutes the offense cannot claim entrapment."). Rather than admitting his participation, Wiggins testified that he was not present during the offense and even instructed his co-defendants not to go forward with the robbery. Tr. at 2150, 2158. Therefore, by denying under oath the acts charged – aiding and abetting robbery and cocaine trafficking – Wiggins foreclosed the possibility that he could receive an entrapment instruction for the Undercover Operation (Counts XV and XVI). *Wilson*, 577 So.2d at 1300. On this record, the Court finds that a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard and therefore denies *habeas* relief. *Richter*, 131 S.Ct. at 788.

With respect to the RICO conspiracy, Magistrate Judge White found that trial counsel actually requested an entrapment instruction. Wiggins' objection, however, fails to suggest, much less establish, that this finding was erroneous. The record clearly reflects, as Magistrate Judge White also found, that trial counsel requested an entrapment instruction for the RICO conspiracy and even filed a motion for new trial based on the trial court's refusal to give such an instruction. *See, e.g.,* Tr. at 2374 2731-33.[18] Wiggins' trial counsel therefore performed the act

_____

[17]Although Wiggins claims that he should have received the entrapment instruction for all Counts against him, the Court need only review the Counts for which the jury convicted him (RICO conspiracy (Count II); Cocaine Trafficking (Count XV); and Armed Robbery (Count XVI)).

[18]Attorney Petit specifically stated that:
...I am entitled to present an entrapment defense, not only to the substantive count, but also to the underlying incident which may establish the RICO, either conspiracy or alternatively the substantive RICO count under those underlying incidents. And I'll leave it up to the State to argue

Wiggins now claims he was ineffective for failing to perform. The Court affirms and adopts Magistrate Judge White's analysis and conclusion regarding this issue.

### (5).   ALIBI INSTRUCTION

Wiggins argued that trial counsel erred by failing to preserve for appeal the trial court's denial of his request for an alibi instruction. Magistrate Judge White summarily rejected this claim because the record reflected that trial counsel preserved the objection. Responding to Magistrate Judge White, Wiggins argues that *Kelly v. State*, 389 So. 2d 250 (Fla. 2nd DCA 1980) requires an attorney to object during the charge conference and again after the jury charge to properly preserve an objection. *See* Obj., p. 19 [DE-16]. *Kelly* has been overruled for almost thirty years and does not reflect the current state of the law on this issue in Florida. *See Heathcoat v. State*, 430 So.2d 945, 948 (Fla. 2d DCA 1983). Under the applicable Florida authorities, trial counsel need only object and state the grounds for the objection prior to the jury returning a verdict. *Saulsberry v. State*, 398 So.2d 1017, 1017 (Fla. 5th DCA 1981); Florida Rule of Criminal Procedure 3.390(d).[19] There is no dispute that trial counsel here objected to the court's failure to give an alibi instruction and stated the grounds for his objection. *See* Tr. at 2366-72. Wiggins' objection is frivolous given the state of the law. The Court therefore affirms and adopts Magistrate Judge White's Report as to this issue and rejects habeas relief for this claim.

---

otherwise.
Tr. at 2374, lns 2-8.

[19]Florida Rule of Criminal Procedure 3.390(d) provides:
Objections. No party may raise on appeal the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection.

### (6).   PRINCIPAL INSTRUCTION

Magistrate Judge White also recommended that the Court deny Wiggins' sixth claim. The sixth claim advances two sub-claims related to the same jury instruction - that trial counsel's failure to object to the Principal jury instruction allowed the jury to improperly convict Wiggins of (1) trafficking in cocaine; and (2) conspiracy. The claim related to the trafficking in cocaine conviction has no merit as set forth more fully in the following section. The claim involving Wiggins' conviction of conspiracy to commit RICO must also fail, but for different reasons than those found by Magistrate Judge White. Having reviewed Wiggins' objection to that recommendation, the record and the applicable law, the Court will reject this portion of Magistrate Judge White's Report as follows:

At the outset of his analysis, Magistrate Judge White stated that, "[t]he Respondent correctly concedes the instant petition was timely filed and the claims were exhausted in State court." Report, p. 8 [DE-12]. This statement, however, is not completely accurate. In its Response to Order to Show Cause, the State actually argues that Wiggins' claim that trial counsel was ineffective for failing to object to the principal instruction in connection with a conspiracy count (Claim Six) is not exhausted, and thus, procedurally barred. Resp., pp. 13-14 [DE-7]. The Court must reject Magistrate Judge White's conclusion that this claim was exhausted because Wiggins failed to present this claim to all levels of the state court system. *See Baldwin v. Reese*, 541 U.S. 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Wiggins raised the issue for the first time in his Supplemental Motion Post Conviction Relief as to Claim Three of First Supplement dated November 5, 2007. [App. FF]. By the time Wiggins received the Order denying the Supplemental Motion, he had already filed his appeal of the underlying motion. In

-17-

his brief on appeal filed five months after the trial court denied the Supplemental Motion, Wiggins' arguments related to the principal instruction are limited to the trafficking in cocaine conviction, and not the conspiracy conviction. A footnote in Wiggins' state court brief acknowledges that he "filed an enlargement of this issue challenging the Principle (sic) instruction," but does not otherwise advance the factual and legal substance of that federal claim in his appellate brief. [App. II, p. 35, n.1]. After the appellate court summarily denied the appeal [App. JJ], Wiggins filed a motion for rehearing setting out 26 different issues or reasons the Court should grant rehearing, *see* App. KK. Nowhere in that motion for rehearing is there any discussion of the principal instruction as it relates to the conspiracy conviction. Accordingly, on this record, the Court cannot find that Wiggins "fairly presented" this claim to the state appellate court. *Henderson v. Campbell*, 353 F.3d 880, 895, n.25 (11th Cir. 2003). This claim - that trial counsel was ineffective for failing to object to the principal instruction as it relates to the conspiracy count - has not been exhausted, and thus, Wiggins is procedurally barred form raising this claim before this Court.[20] Wiggins' sixth claim is therefore denied. The Court will address this argument as it relates to appellate counsel in the eleventh claim.

### (7).   TRAFFICKING IN COCAINE INSTRUCTION

Wiggins also claims that he received ineffective assistance of counsel when his attorney failed to object to the jury instruction for trafficking in cocaine. Wiggins argued that the standard instruction failed to define the "knowledge" element of the trafficking in cocaine charge. Magistrate Judge White denied the claim because he characterized Wiggins argument as one

---

[20]There is no doubt that this claim would be barred if Wiggins were to now raise this claim in Florida state court.

raising only issues of state law. Relying on *Erickson v. Sec'y Dept't of Corr.*, 243 Fed. Appx. 524 (11th Cir. 2007), Magistrate Judge White concluded that *habeas* relief is unavailable for a claim that a jury instruction was incorrect under state law.

While Wiggins advanced the argument rejected by Magistrate Judge White, he also asserted a *Strickland* claim related to the cocaine trafficking instruction. Wiggins' Petition specifically provides:

> GROUND SEVEN: The trial counsel was ineffective for failing to object to the fundamentally flawed jury instruction that defined Trafficking in Cocaine.

Pet., p. 15 [DE-1]. Therefore, contrary to Magistrate Judge White's conclusion, Wiggins has stated a claim that *could* warrant habeas relief. As set forth below, however, the Court must still deny this claim for relief.

Though Wiggins' assertions are less than clear, he seems to argue that trial counsel should have objected to the trafficking in cocaine jury instruction because it failed to define "guilty knowledge." Pet. Reply, p. 16 [DE-10]. Wiggins defines "guilty knowledge" as a "defendant having, 1) Knowledge that the thing was within the persons presence, and 2), Knowledge of the illicit nature of the thing." *Id.* (grammar and punctuation errors in original). Because the trial court failed to instruct the jury as to this definition of "guilty knowledge," Wiggins contends that the jury was able to wrongfully convict him "of trafficking in cocaine even though he never took possession of the substance, and he never 'knew' that officer Johnson actually took cocaine from undercover White." *Id.*

Wiggins claim must be rejected for at least two different reasons. First, the cocaine trafficking instruction provided to the jury actually contained the language Wiggins claims was

missing. *See* Tr. at 2654 ("2. Knowledge that the thing was within the person's presence; and 3. Knowledge of the elicit (sic) nature of the thing."). Second, Wiggins was charged and convicted of trafficking in cocaine as a principal, *i.e.*, for aiding and abetting officer Johnson's trafficking in cocaine. As a principal, Wiggins did "not have to be present when the crime [was] committed or attempted." *Id.* at 2635. That Wiggins personally never took possession of the cocaine is therefore irrelevant. For these reasons the Court must reject Magistrate Judge White's analysis of this issue, but must still reject Wiggins' Seventh Claim for relief as set forth herein.

### (8).   PRIOR CONVICTIONS

In his Eighth Claim, Wiggins argued that trial counsel was ineffective for "failing to ameliorate the negative effect of his prior convictions." Obj., p. 28 [DE-16]. Wiggins maintained that trial counsel should have informed the jury that his prior convictions were the result of guilty pleas, and the failure to do so constituted ineffective assistance of counsel. Magistrate Judge White determined that Wiggins failed to establish either deficient performance by counsel or prejudice. Rep., pp. 24-26 [DE-12]. Magistrate Judge White concluded that counsel's decision to "bury" the information concerning Wiggins' prior convictions "in the midst of Wiggins' direct testimony" was well within the scope of proper trial strategy. *Id.* The Court finds that Magistrate Judge White has articulated a reasonable basis for the state court's decision. The Court further finds that Wiggins has failed to demonstrate there was "no reasonable basis" for the state court's decision. *Pinholster*, 131 S.Ct. at 1402. Accordingly, having reviewed the issue *de novo*, the Court affirms and adopts Magistrate Judge White's well-reasoned treatment and denial of Claim Eight.

### (9).   TRIAL COUNSEL FAILED TO OBJECT TO INADEQUATE NOTICE OF SENTENCING ENHANCEMENT

Wiggins also objects to Magistrate Judge White denying his Ninth Claim for habeas relief - that trial counsel performed deficiently by failing to object to the lack of proper notice of a sentencing enhancement. Magistrate Judge White concluded that the record refuted Wiggins' claim. Report, p. 26 (citing Tr. at 2716). In his objection, Wiggins argues that the record reflects that the prosecutor only gave notice of filing a motion to exceed the sentencing guidelines, which does not constitute "written notice" of the State's intent to seek a habitual violent felony offender sentence enhancement under Florida Statute § 775.084. Obj., pp. 30-33. Wiggins objects to this factual finding and argues that the record does not support Magistrate Judge White's conclusion. At the direction of the Court, the State recently produced a copy of the written notice. *See* Order of Dec. 16, 1999 [DE-20]. Wiggins maintains his objection and argues he never received a copy of the notice recently filed with the Court. Resp., p. 2 [DE-23].

The Court must reject Wiggins' arguments and overrule his objection. The State gave both written and oral notice of the intent to sentence Wiggins as a habitual violent offender under Florida Statute 775.084. *See* Notice [DE-20]; Tr. at pp. 2716-17. The day after the jury found Wiggins guilty, on December 16, 1999, the parties convened before Judge Deehl for Wiggins' sentencing. During a colloquy with the court, the prosecutor stated on the record that he had filed two motions that morning related to sentencing: (1) a motion to depart above the sentencing guidelines; and (2) a notice of the State's intent to sentence Wiggins as a Habitual Violent Offender. The certificate of service for the written notice of sentencing as a Habitual Violent Offender indicates that a copy was "furnished to Defense Counsel" on December 16, 1999.

-21-

Further, the prosecutor stated during the hearing on December 16, 1999, that:

> [I]t's the State of Florida's position this defendant is an extreme danger to the community. We have filed a Notice to Seek Enhanced Penalty under the Career Criminal Statute and [Wiggins] does qualify as a Habitual Violent Offender. So I filed that motion this morning...it's the State's position that the proper sentence ... is a Habitual Violent Offender and facing life in prison with a fifteen year minimum mandatory, and that's what the State is going to be seeking in this case. So pending at this point is a notice of our intention to seek the enhanced penalty pursuant to Florida Stature [sic] 775.084 [.]"

Tr. at pp. 2716-17. Based on the State's filing of the motion and the need to prepare a

Presentence Investigation Report, Judge Deehl set the sentencing for two months later on

February 18, 2000. Tr. at p. 2721. During the sentencing hearing, the prosecuting attorney

stated, "I also want the record to reflect too the notice of the State to enhance penalty was filed

and in open Court December 16, 1999, when all of us was (sic) present. I believe your honor has

a copy of it." *See* App. S, p. 34. The State Court docket entry for December 16, 1999, also

reflects the filing of the habitual violent offender notice. *See* docket entry 257 ("NOTICE:

STATE'S INTENT TO ENHANCE PENALTY-775.084/ORDER: PSI").[21] Even if the Court

were to accept as true Wiggins most recent claim that *he* never received a copy of the notice,

there is no suggestion that his counsel never received the notice. The entirety of the record flatly

contradicts any suggestion that defense counsel did not receive the notice on December 16, 1999.

The most obvious evidence that defense counsel received the notice are the statements of counsel

during the hearing on December 16, 1999, which provide:

> If the motion [for new trial] is granted, we don't need to do anything else. And why should I bring in all these folks and prepare them and the State do the same for a full-blown evidentiary hearing as to the Habitual Violent Offender motion

---

[21]http://www2.miami-dadeclerk.com/cjis/CaseSearch.aspx for Case No. F97-33314D, visited on Aug. 2, 2011.

and for the enhanced penalty if indeed the court agrees that the laws applied in this particular case was incorrect.

Tr. at p. 2719. The record reflects that Wiggins or his attorney received both oral and written notice of the State's decision to sentence Wiggins as a Habitual Violent Offender.

The record therefore supports Magistrate Judge White's conclusion that Wiggins had written notice of the State's decision to sentence Wiggins as a habitual violent offender and there was no ineffective assistance where Wiggins actually received the notice he argues counsel should have objected to not receiving. The Court therefore overrules the objection and affirms and adopts Magistrate Judge White's analysis rejecting this claim for relief as supplemented herein.

### B.     ILLEGAL SENTENCE

With respect to the Tenth Claim, Magistrate Judge White concluded that "Wiggins has stated no claim for which federal habeas relief is available." Report, p. 28. In his objection, Wiggins merely states that he objects to ths recommendation "for the reasons stated in Issue Nine[.]" The Court finds this to be an improper and inadequate objection because it simply fails to address Magistrate Judge White's conclusions. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (habeas petitioner did not sufficiently object to a magistrate judge's recommendation because his objection was insufficiently clear and precise.). The Court affirms and adopt's Magistrate Judge White's Report concerning Claim Ten.

### C.     INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL- PRINCIPAL INSTRUCTION

Wiggins' eleventh claim is similar to his sixth claim, but instead of his trial counsel, Wiggins argues that appellate counsel was ineffective for failing to argue on appeal that the

principal instruction should not have been given in connection with the conspiracy count. Magistrate Judge White's analysis of this claim merely incorporates his analysis of the sixth claim, which this Court has already rejected. Accordingly, the Court will address Wiggins' eleventh claim anew.

In the underlying criminal case, Wiggins argued in his post-conviction motion that his appellate attorney performed ineffectively when he failed to argue that the trial court erred in giving a principal jury instruction in connection with a conspiracy count. [DE-8, App. PP, p. 4]. Wiggins supported his motion by directing the appellate court to its own recent decision involving Wiggins' co-defendant, Kanisky Evans. In that case, Evans' trial counsel objected to the principal instruction, and argued:

> The principal instruction is not applicable to any count of conspiracy. There is nowhere that it says that. You can't be a principal to a conspiracy. In other words, either you are a member or not... I would ask the Court to say this instruction applies to substantive counts only. To crimes that are not conspiracy.

*Evans v. State*, 985 So.2d 1105, 1106 (Fla. 3d DCA 2008). The trial court overruled the objection and did not limit the principal instruction in the manner suggested by defense counsel. After the jury convicted Evans of conspiracy to commit RICO, his appellate counsel did not raise the claim that it was error to give the principal instruction in connection with a conspiracy charge. *Id.* On appeal of the denial of habeas relief, the Third District held that "[t]rial counsel's objection to the principal instruction was well taken." The court noted it was well-settled in Florida that "[c]onduct that aids and abets an offense is insufficient to prove conspiracy." *Id.*(collecting cases). The appellate court then concluded that "the principal instruction should not have been given in connection with the conspiracy charges." *Id.* The court then held that

-24-

appellate counsel provided ineffective assistance of counsel for failing to raise a challenge to the trial court giving a jury instruction on principals in connection with a conspiracy count. *Id.* at 1106-07. The Third District granted Evans' habeas petition, vacated his conspiracy conviction and remanded the matter to the trial court. *Id.* at 1107.

The same principal instruction was given in both Wiggins and Evans' trials. *Id.* at 1106; Tr. at 2635. Despite the similarities between the two cases, the Third District summarily denied Wiggins' request for habeas relief without an opinion. [DE-8, App. RR]. Wiggins then filed motions for rehearing and rehearing *en banc*, relying, again, on the result in *Evans*. In response, the State argued that the court should deny Wiggins' relief because his petition (1) was untimely; (2) successive; (3) the error was not preserved for appellate review (unlike Evans, Wiggins' trial counsel did not object to the instruction); and (4) the error did not raise to a fundamental error. Resp., pp 2-11 [DE-8, app. UU]. On August 5, 2008, the Third District summarily denied Wiggins' motions without an opinion. [DE-8, App. WW]

As of the date the Third District denied Wiggins' motions, it had already granted habeas relief to two of Wiggins' co-defendants because they received ineffective assistance of counsel as to the principal instruction. In addition to Evans, the Third District also found Ernest McKay received ineffective assistance of appellate counsel. *McKay v. State*, 988 So.2d 51 (Fla. 3d DCA 2008). Although his petition was untimely under the Florida Rules of Appellate Procedure, McKay argued that consideration of his claim was necessary to avoid a manifest injustice. *Id.* at 52. After discussing the holding in *Evans*, and noting that McKay had also been convicted of conspiracy, the appellate court stated that, "for the reasons set forth in our decision in *Evans*, we now vacate and remand for a new trial McKay's conviction and sentence as to the conspiracy-

-25-

counts[.]" *Id.*

Following the Third District granting habeas relief to Evans and McKay and denying

relief to Wiggins, the court considered similar habeas petitions from two more of Wiggins' co-

defendants, Wallace Johnson and Daniel Hilbert. *Johnson v. State*, 990 So.2d 1245 (Fla. 3d

DCA 2008); *Hilbert v. State*, 992 So.2d 441 (Fla. 3d DCA 2008). As in McKay, Evans and

Wiggins' trials, the trial court in Johnson and Hilbert's cases gave the principal instruction in

connection with the conspiracy counts. *Johnson*, 990 So.2d at 1245; *Hilbert*, 992 So.2d at 441.

The *Hilbert* court noted it had already afforded relief to two of Hilbert's co-defendants and

stated:

> We grant the defendant's petition and remand for a new trial on the conspiracy
> counts only because, as the State properly concedes, this relief is necessary to
> prevent a manifest injustice.

*Hilbert*, 992 So.2d at 441. In *Johnson*, after noting that the court had granted habeas relief and

remanded for new trials for both of Johnson's co-defendants, the court stated:

> Johnson was convicted solely on two counts of conspiracy; justice requires that he
> be afforded the same relief.

*Johnson*, 990 So.2d at 1245. Neither decision mentioned or referenced the contrary result

reached in the *Wiggins'* decision.

This Court's duty at this stage of the proceeding is to identify "what arguments or

theories ... could have supporte[d] the state court's decision; and then [ ] ask whether it is

possible that fairminded jurists could disagree that those arguments or theories are inconsistent

with the holding in a prior decision of [the Supreme Court]." *Pinholster*, 131 S.Ct. at

1402(internal quotations omitted). Given the circumstances of Wiggins' co-defendants' cases,

-26-

this Court is at a loss to identify the arguments or theories that the state courts could have relied upon to deny habeas relief to Wiggins but grant it to all of his co-defendants on this issue. The only two reasonable arguments advanced here - that Wiggins admitted the conduct that would support a conspiracy conviction and counsel's error did not rise to the level of a fundamental error - must fail for the reasons set forth below.

The first argument relates to Wiggins' trial strategy where he asserted an entrapment defense to the Fice and Jacksonville incidents. Under that defense, Wiggins admitted his involvement in the those incidents, but argued he was induced into participating by a government agent. The jury acquitted Wiggins of the crimes related to those two incidents. Nonetheless, the jury could have based its guilty verdict for conspiracy on the predicate acts Wiggins admitted, but for which the jury found him not guilty. Or at least that would be the argument to deny habeas relief on this claim. In other words, because Wiggins essentially admitted the two predicate acts necessary to support a conspiracy conviction, he cannot demonstrate appellate counsel was deficient for failing to object to the principal instruction or that this alleged error prejudiced him.

The logical underpinnings for this argument are faulty and perpetuate an incorrect ruling Judge Deehl made during Wiggins' trial.[22] As discussed previously, it is a well-settled rule in Florida that the entrapment defense is only available where an individual admits performing the charged acts. *Wilson*, 577 So.2d at 1300. An exception to this rule, however, exists with respect to the crime of conspiracy. In Florida, a defendant may deny being part of a conspiracy, but may still assert an entrapment defense where, for example, he admitted committing the overt acts. *Id.*

---

[22]Trial counsel strenuously objected to the trial court denying the entrapment instruction as to the overt acts in the RICO conspiracy count. And after Judge Deehl rejected his argument, trial counsel stressed that the ruling was tantamount to directing a guilty verdict on the RICO conspiracy count.

-27-

at 1302 (citing *Stripling v. State*, 349 So. 2d 187, 192 (Fla. 3d DCA 1977). Thus, a party may deny a conspiracy charge but still have the jury instructed on the entrapment defense as to the overt acts. *Id.* Here, Wiggins should have been entitled to an entrapment defense for the RICO conspiracy with respect to the overt acts he admitted committing. Considering the jury acquitted Wiggins of the acts he admitted, these acts cannot be used to support his RICO conspiracy conviction.[23]   Wiggins' admission to these acts therefore provides no basis for the Court to reject Wiggins' claim that appellate counsel was deficient.

The second argument must also fail. The State suggests that this case differs from Evans' case, and requires a different result, because Evans' trial counsel objected to the principal instruction. Because Wiggins' trial counsel failed to assert an objection to the principal instruction, the State argues that the error was not preserved for appeal and Wiggins could have only prevailed if the error "was deemed to be a fundamental error." Resp., p. 24 [DE-7]. The State explains further that:

> ....for error to meet this standard, it must follow that the error prejudiced the defendant. Therefore, all fundamental error is harmful error. *Reed v. State*, 837 So.2d 366, 370 (Fla.2002). Fundamental error is an error that would result in a miscarriage of justice if not considered, *Am. Sur. Co. of N.Y. v. Coblentz*, 381 F.2d 185 (5th Cir. 1967), and is of such a nature that it essentially amounts to a denial of due process. *Hooters of Am., Inc. v. Carolina Wings, Inc.*, 655 So.2d 1231 (Fla. 1st DCA 1995).

*Id.* The State maintains that the error here - trial counsel's failure to object to the principal instruction - does not meet this standard.

It is difficult, if not impossible, for the Court to reconcile this argument with the results

---

[23]Wiggins failed to raise this argument as to appellate counsel, which would have been well-taken. But since the Court will grant habeas relief here, what Wiggins should have done in this regard is of no consequence.

reached in Wiggins' co-defendants cases. Putting aside the *Evans* decision for the moment, the

courts in *Johnson, McKay* and *Hilbert* granted habeas relief "to prevent a manifest injustice."

*See, e.g., Johnson*, 990 So.2d at 1245. There was no discussion in those decisions as to whether

trial counsel objected to the jury instruction. Rather, the *Hilbert* court noted the reversal in

*Evans* and then held that "justice requires he be afforded the same relief." In other words,

granting *habeas* relief was necessary because each of Evans' co-defendants' trials were tainted by

the same principal jury instruction. Removing any doubt as to the reasoning behind the reversal,

the *Hilbert* court specified that, "[w]e grant the defendant's petition and remand for a new trial

on the conspiracy counts *only* because [ ] this relief is necessary to prevent a manifest injustice."

992 So.2d at 441(emphasis added). For the State to now argue that the very same error does not

constitute manifest injustice is irreconcilably antagonistic with the rulings in *Johnson, McKay*

and *Hilbert*. It is not insignificant that the State conceded in *Hilbert* and *Johnson* that reversal

was necessary to prevent manifest injustice. *See, e.g., Johnson*, 990 So.2d at 1245. Justice

requires that Wiggins be afforded the same relief the state courts afforded Evans, McKay,

Johnson and Hilbert.[24] The State's argument that counsel's error did nor rise to the level of a

fundamental error must therefore be rejected.

     Accordingly, these arguments do not support the state court's denial of Wiggins' habeas

---

[24] While the Court has no reason to speculate as to why the appellate court refused Wiggins the same relief it afforded his co-defendants, it appears from the record that courts may have grown tired of Wiggins' "raise anything and everything" motion practice. In denying a prior appeal, the appellate court noted that:

> Wiggins has engaged in successive post-conviction motions in trial court, followed by four successive appeals or petitions here. The instant case is thus Wiggins' fifth post-conviction proceeding in this Court.

> The petition states no basis, sworn or otherwise, for the Court to disregard the limitations periods provided by the Florida Rules of Criminal Procedure or the well-settled case law prohibiting successive and duplicative applications.

*Wiggins v. State*, No. 3D08-218 (Fla. 3d. DCA Feb. 26, 2008).

-29-

claim on this issue. And finding no other arguments to support the state court's rejection of claim eleven, the Court will grant Wiggins' Petition as to claim eleven and find that appellant counsel rendered ineffective assistance of counsel when he failed to argue that the trial court erred in giving a Principal jury instruction in connection with a conspiracy count. Appellate counsel's failure to argue on appeal that Judge Deehl erred in refusing an entrapment instruction for the overt acts in Count II constitutes ineffective assistance of counsel under *Strickland.*

**IV.    REMEDY**

This matter shall be remanded to the Circuit Court for the Eleventh Judicial Circuit, in and for Dade County, Florida for a new trial on Count II, the RICO Conspiracy.

**V.    CERTIFICATE OF APPEALABILITY**

The Court will deny issuance of a certificate of appealability for the unsuccessful claims in Wiggins' Petition. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court, having established grounds for entering a "final order adverse to the applicant" on most of this Petition, "must issue or deny a certificate of appealability." In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Jones v. Secretary*, 607 F.3d 1346, 1349 (11th Cir. 2010) (quotation omitted). Here, Wiggins has not made this showing.

**VI.    CONCLUSION**

Thus, the Court will affirm and adopt in part, and sustain the objection to the Report in

-30-

part as set forth below.  Accordingly, it is hereby

ORDERED that:

(1)    The Magistrate Judge White's Report [DE -12] is AFFIRMED and ADOPTED IN PART and REJECTED IN PART.

(2)    The Report is REJECTED to the extent that Movant's Objections [DE-16] are SUSTAINED as to Claims 6, 7 and 11.

(3)    Movant's Motion to Vacate Sentence [DE-1] is GRANTED IN PART.  The motion is GRANTED as to Claim 11 and Wiggins' conviction and sentence of life in prison as to Count II (RICO Conspiracy) is VACATED.

(4)    The Report [DE-12] is otherwise AFFIRMED AND ADOPTED and supplemented by the discussion herein.

(5)    Movant's Objections [DE-16] are otherwise OVERRULED.

(6)    Movant's Motion to Vacate Sentence [DE-1] is otherwise DENIED.

(7)    This matter is remanded to the state court for a new trial on the RICO conspiracy count, Count II.

(8)    A Certificate of Appealability as to Claims One through Ten is DENIED.

(9)    This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this ___31st___ day of August, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge White

-31-